**James C. BERRY and Carlydia Berry, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 78-1307.

United States Court of Appeals, Sixth Circuit.

June 16, 1980.

Fred H. Moore, Spears, Moore, Rebman & Williams, William L. Taylor, Jr., Chattanooga, Tenn., for petitioners-appellants.

M. Carr Ferguson, Asst. Atty. Gen., Richard N. Bush, Gilbert E. Andrews, Richard Farber, David I. Pincus, Tax Division, U. S. Dept. of Justice, Stuart E. Seigel, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent-appellee.

Before CELEBREZZE, ENGEL and BROWN, Circuit Judges.

ORDER

In 1972 taxpayer was in the business of operating parking facilities at airports throughout the country. In 1968 he had entered into an agreement with the Jefferson County Airport, serving Beaumont, Texas, to operate a pay parking facility there. In the agreement, taxpayer's company agreed to pay the county "rentals" based on gross receipts. The agreement also provided that taxpayer would incur the expense of constructing the initial parking facility at the airport.

The agreement provided that the County could construct the parking facility itself and then be reimbursed by taxpayer, or, the County could direct taxpayer to do the construction. The County ultimately directed taxpayer to construct and pay for the facility.

The agreement expressly stated that title to and ownership of any equipment and improvements built by taxpayer were to vest in the County immediately upon their completion. Taxpayer spent $59,000.91 in constructing the facility. This included expenses for grading and paving, lighting, gates, etc.

Taxpayer opened the facility for business in November, 1970. The contract agreement signed in 1968 provided for taxpayer to operate the facility exclusively for a period of ten (10) years. However, before the facility had opened, parking was free at the airport. After operating the facility for one year, problems developed with citizen dissatisfaction at having to pay for parking.

Accordingly, the County decided to negotiate to repurchase taxpayer's rights under the agreement with a view toward eliminating pay parking at the airport. In November 1972, taxpayer and the County entered

into a subsequent agreement whereby taxpayer sold to the County all its rights granted in the initial agreement. In exchange for relinquishing the rights granted under the original contract, taxpayer received $60,000.00.

In computing his income tax for 1972, taxpayer stated that $8,672.27 was depreciation in prior years for "leasehold improvements." After subtracting this from the $59,000.91 (the total cost of the leasehold improvements) there remained an unrecovered basis of $50,328.64. Taxpayer then deducted this amount in full as depreciation of the leasehold improvements allegedly sustained in 1972. Taxpayer also reported the $60,000.00 received from the County as a long term capital gain from the sale of "lease rights".

The Commissioner disallowed $43,259.63 of the claimed $50,328.64 deduction for depreciation of the parking facility on the ground that taxpayer was entitled to depreciate only the cost of the construction during the time the facility was actually operated by taxpayer in 1972. The Commissioner also decreased the $60,000.00 reported by the unrecovered basis of the rights sold in the amount sold of $40,776.27.

The tax court sustained the Commissioner's determinations. Basically, the tax court held that the taxpayer's expenditures for the parking facility improvements were consideration for the lease, and as such, the expenditures should have been included in the taxpayer's basis in the lease.

Since we are convinced that the tax court was correct in its determinations, we affirm its decision in all respects.